**FOR PUBLICATION**



FILED

Apr 19 2013, 8:55 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL R. FISHER**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RAZIEN McCULLOUGH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1210-CR-789 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
Cause No. 49G06-1012-MR-91883

**April 19, 2013**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

**INTRODUCTION**[1]

Appellant-Defendant Razien McCullough lived in Indianapolis with Lawrence Miles, Kharisma Archie, and Archie's two young children. Late on December 8, 2010, or early the next morning, McCullough shot and killed Miles and Archie. McCullough shot both Miles and Archie in the head and also shot Archie in the thigh. McCullough concealed the bodies on the back porch of the residence and contacted police the next day. McCullough told police in a statement that he had acted in self-defense. The State charged McCullough with two counts of murder, a jury found him guilty as charged, and the trial court sentenced him to an aggregate term of 115 years of incarceration. McCullough contends that the State failed to produce sufficient evidence to disprove his claim of self-defense and that his sentence is inappropriately harsh. We affirm.

**FACTS AND PROCEDURAL HISTORY**

In December of 2010, McCullough lived with Miles, Archie, and Archie's two young children in a house on Temple Avenue in Indianapolis. McCullough had previously known Miles in New Jersey. Late on December 8, 2010, or early the next morning, McCullough, Miles, and Archie became involved in an argument in the basement of the home. At some point, McCullough managed to obtain a handgun and shot both Miles and Archie to death. Miles died of a single gunshot wound to the head that entered at his right temple and exited

[1] The record on appeal in this case was prepared pursuant to the Indiana Supreme Court's "Order Establishing the Indiana Court Reporting Pilot Project for Exploring the Use of an Audio/Visual Record on Appeal[,]" issued on September 18, 2012, and effective on July 1, 2012. *See* Ind. Supreme Court Case No. 94S00-1209-MS-522. We are grateful for the ongoing cooperation of the Honorable Mark D. Stoner of Marion Superior Court, the Marion County Public Defender Agency, and the Office of the Indiana Attorney General in the execution of this pilot project.

behind his left ear.  Archie suffered two gunshot wounds, a fatal wound to the head that entered in the back and exited near her mouth, breaking her upper jaw and two teeth, and a wound to her thigh.  McCullough removed the bodies from the basement and concealed them under a thin piece of wood on the back porch.

At approximately 8:00 p.m. on December 9, 2010, Indianapolis Metropolitan Police Officer Jacob Tranchant was dispatched to a Kroger nearby the house where Miles and Archie were killed, where the officer encountered McCullough.  McCullough told police that he wanted to get something off of his chest and that they probably already knew what he had done to the people on Temple.  Officer Tranchant and two other officers proceeded to the house on Temple, where they communicated with Archie's two children through a window.  The children eventually allowed the officers entry, where they soon found what appeared to be blood stains in the basement and Miles's and Archie's bodies on the back porch.  In an interview with police later that evening, McCullough claimed that he had acted in self-defense:  he had attempted to intervene in an argument between Miles and Archie, Miles had come at McCullough with a gun, McCullough disarmed and shot Miles in the head, and Archie "came right after [McCullough] and [he] shot her too."  State's Ex. 84 p. 135.  McCullough told police that before killing Miles, he "[put] his weight on him and [he] knew [he] had him."  State's Ex. 84 p. 145.  McCullough told police that he told Archie's children the next morning before he left the house that Archie and Miles had argued, that Archie was at the store, and that they would be back at some point.

3

On December 14, 2010, the State charged McCullough with two counts of murder. On February 24, 2012, McCullough filed a notice of self-defense. On August 21, 2012, the jury found McCullough guilty as charged. On September 6, 2012, the trial court sentenced McCullough to fifty-five years of incarceration for the murder of Miles, sixty years for the murder of Archie, and ordered that the sentences be served consecutively. The trial court found McCullough's multiple victims and criminal history to be aggravating circumstances. The trial court found McCullough's history of mental health issues, the fact that he turned himself in, and the fact that he seemingly attempted to hide Miles's and Archie's bodies from her children to be mitigating circumstances, although it noted that McCullough was not taking prescribed medication at the time but was using illegal drugs.

## DISCUSSION AND DECISION

### I. Whether the State Produced Sufficient Evidence to Rebut McCullough's Self-Defense Claim

McCullough argues that the State produced insufficient evidence to rebut his testimony that his murders of Miles and Archie were acts of self-defense. A valid claim of self-defense is legal justification for an otherwise criminal act. *Birdsong v. State*, 685 N.E.2d 42, 45 (Ind. 1997). The defense is defined in Indiana Code Section 35-41-3-2(a): "A person is justified in using reasonable force against another person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force."

When a person raises a claim of self-defense, he is required to show three facts: (1) he was in a place where he had a right to be; (2) he acted without fault; and (3) he had a

reasonable fear of death or serious bodily harm. *Wallace v. State*, 725 N.E.2d 837, 840 (Ind. 2000). Once a person claims self-defense, the State bears the burden of disproving at least one of these elements beyond a reasonable doubt. *Hood v. State*, 877 N.E.2d 492, 497 (Ind. Ct. App. 2007), *trans. denied.* The State may meet this burden by rebutting the defense directly, by affirmatively showing the person did not act in self-defense, or by relying upon the sufficiency of its evidence in chief. *Id.* Whether the State has met its burden is a question of fact for the factfinder. *Id.* The trier of fact is not precluded from finding that a person used unreasonable force simply because the victim was the initial aggressor. *Birdsong*, 685 N.E.2d at 45.

If a person is convicted despite his claim of self-defense, we will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt. *Wilson v. State*, 770 N.E.2d 799, 800-01 (Ind. 2002). The standard on appellate review of a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. *Id.* at 801. We neither reweigh the evidence nor judge the credibility of witnesses. *Id.* If there is sufficient evidence of probative value to support the conclusion of the trier of fact, the verdict will not be disturbed. *Id.*

The State produced sufficient evidence to rebut McCullough's claim of self-defense. Although there seems to be no dispute that McCullough had a right to be in the basement, the only evidence that he acted without fault or that his reactions were reasonable was contained in his his statement to police, an audio recording of which was played to the jury. The jury,

5

however, was under no obligation to credit this evidence and did not. Additionally, it is worth noting that there were two victims in this case, including Archie, who was shot twice (including once in the back of the head), all of which renders McCullough's self-defense claim difficult to believe, to say the least. A further indication of McCullough's guilty conscience is the fact that, rather than report the incident immediately, he initially concealed the bodies and left the home, leaving Archie's two children alone for twelve hours. Ultimately, McCullough's argument amounts to nothing more than an invitation to reweigh the evidence, which we will not do.

## II. Whether McCullough's Sentence Is Inappropriate

We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State*, 849 N.E.2d 650, 660 (Ind. Ct. App. 2006), *trans. denied* (citations and quotation marks omitted). As previously mentioned, the trial court sentenced McCullough to an aggregate sentence of 115 years of incarceration.

The nature of McCullough's offenses is somewhat egregious, murdering two victims by shooting them in the head. The Indiana Supreme Court has observed that "when the perpetrator commits the same offense against two victims, enhanced and consecutive

6

sentences seem necessary to vindicate the fact that there were separate harms and separate acts against more than one person." *Serino v. State*, 798 N.E.2d 852, 857 (Ind. 2003). Moreover, there is no evidence, apart from McCullough's self-serving statement to police, that McCullough acted in self-defense. As previously mentioned, Archie was shot twice, once in the thigh and once in the back of the head, which severely undercuts McCullough's claim that she was attacking him at the time. Archie's two young children, who are now motherless, were in the house at the time of the murders, and McCullough left them alone in the house for perhaps twelve hours before calling police. The nature of McCullough's offenses justifies enhanced, consecutive sentences.

McCullough's character also justifies the imposition of enhanced and consecutive sentences. McCullough's juvenile and criminal records reveal violent tendencies that have intensified over time, culminating in the murders of Miles and Archie. As a juvenile, McCullough had adjudications for possession of a weapon, two counts of criminal attempt, criminal mischief, three counts of "manufacture/distribute[,]" distributing a controlled substance on school property, and receiving stolen property. Confidential App. at 57. As an adult, McCullough had convictions for second degree conspiracy to commit aggravated assault (a charge that had been reduced from conspiracy to commit murder) and third degree unlawful possession of a weapon. Despite McCullough's numerous contacts with the criminal justice system and many juvenile adjudications and criminal convictions, he has not conformed his behavior to societal norms.

McCullough's challenge to the appropriateness of his sentence is based on his

7

assertion that the facts of the incident suggest that his mental illness played a role. Not only is this assertion inconsistent with McCullough's never-retracted claim that he rationally acted in self-defense, the record does not support it. Prior to trial, however, two medical doctors evaluated McCullough for competency and concluded that McCullough was able to appreciate the wrongfulness of his actions. Dr. George Parker concluded that, although McCullough suffers from chronic paranoid schizophrenia, he removed or cleaned up evidence of his crimes and confessed to police, which indicate appreciation of the wrongfulness of his actions. Dr. Ned Masbaum opined that McCullough suffered from probable schizophrenia but that he was able to appreciate the wrongfulness of his actions, noting, as had Dr. Parker, that he moved and hid his victims' bodies and called police to report what he had done. The record simply does not support McCullough's contention that mental illness played a part in the commission of his crimes. Additionally, even assuming that mental illness may have played a part in McCullough's crimes, the trial court noted McCullough's use of illegal recreational drugs instead of prescribed medications. In light of the nature of his offenses and his character, McCullough has failed to establish that his 115-year aggregate sentence for two murders in inappropriate.

We affirm the judgment of the trial court.

KIRSCH, J., and MAY, J., concur.