## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
May 22 2015, 5:35 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Michael R. Fisher
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Leonard Bond,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

May 22, 2015

Court of Appeals Case No.
49A04-1412-CR-554

Appeal from the Marion Superior Court.
The Honorable Marc Rothenberg, Judge.
Cause No. 49G02-1304-MR-25924

**Baker, Judge.**

[1]     Leonard Bond appeals his conviction and sentence for Murder,[1] a felony.  He argues that the State failed to present sufficient evidence to rebut his claim of self-defense and that his sentence is inappropriate in light of the nature of the offense and his character.  Finding no error, we affirm.

## Facts

[2]     At approximately 5:00 am on April 20, 2013, Bond and his girlfriend, Louisa Tranbarger, went to a Denny's restaurant in Marion County.  Bond had a gun visibly protruding from his right pocket.  Several of the other patrons at Denny's were concerned about the gun and asked a member of the wait staff if it was legal for a person to bring a gun into the restaurant.

[3]     Bond and Tranbarger ordered drinks and then walked to the crane machine near the entrance of the Denny's.  At approximately 5:30 am, Mario Wilson, his fiancée, Karen Dunbar, Annette Smith, and Carl Smith arrived at the Denny's.  When they entered the restaurant and passed Bond and Tranbarger, Bond said "look at [the] old people, what just dragged in at night when they get old."  State's Ex. 4.  The four ignored this statement and continued to their table.

[4]     The group was seated at a window table close to the entrance.  Sometime after they had been seated, Bond and Tranbarger sat down at a booth directly behind

---

[1] Ind. Code § 35-42-1-1.

them. Bond again began making comments about how old the group was. At that point, Wilson and Dunbar turned around to ask Bond if he had a problem with them. Bond stated that he did not, but continued to talk about old people being out at night. The other patrons in the restaurant heard raised voices and became uncomfortable, as they knew that Bond was carrying a gun.

[5] At some point, Bond got up because he was upset and went to the bathroom. As he passed Wilson's table, Bond lifted up his shirt in a way that allowed others to see the gun he was carrying. When Bond returned, he and Wilson began to argue again, this time more loudly. This made other patrons so nervous that they decided to leave.

[6] Eventually, Bond stood up and tossed money for his meal on the table. He then turned around, flipped off Wilson with his middle finger, and told Wilson they could take the fight outside. Wilson ignored this and continued talking to the group at his table. Bond and Tranbarger walked outside of the Denny's, but they did not leave. Instead, Bond began banging on the window next to Wilson's table with his fist and then tapped on it with his gun. Bond motioned to Wilson that he should come outside.

[7] Tranbarger told Bond they should leave, but Bond walked back towards the Denny's. Wilson stood up and yelled, "do not let that man back in." *Id.* Wilson then walked towards the entrance. Wilson then went outside, and Bond shot him three times. Wilson was unarmed.

Dunbar and Carl Smith then went outside, where they saw Wilson hanging from Bond's arm in an attempt to stay upright. Dunbar and Carl Smith wrestled Bond to the ground, where they kept him until the police came and handcuffed him.

Wilson was transported to the hospital, where he died as a result of his gunshot wounds. One bullet had fractured his left cheek and lacerated the right carotid artery, another struck his chin, and a third hit his right shoulder and lacerated the right brachial artery. The autopsy showed that Bond was more than three feet away from Wilson when he shot him. Any of the three shots would have been fatal.

On April 22, 2013, the State charged Bond with murder, a felony, and carrying a handgun without a license, a class A misdemeanor. In addition, the State alleged that Bond's sentence should be enhanced because he used a firearm in the commission of a felony. On June 27, 2013, Bond filed a notice of affirmative defense, and the jury was given an instruction on self-defense at trial. On June 4, 2014, Bond pleaded guilty to carrying a handgun without a license.

Bond's three-day jury trial commenced on September 15, 2014. At trial, the State presented the testimony of Dunbar, Carl Smith, and Annette Smith, as well as the testimony of three restaurant patrons and a waitress who were present during the shooting. Bond testified that he shot Wilson in self-defense because Wilson kept "coming directly at" him after he told him to stop. Tr. p.

290. However, Bond also testified that he was not sure if Wilson was armed and admitted that Wilson had not threatened him or physically touched him before he shot him. Tranbarger also testified that Wilson had not threatened or touched Bond before Bond shot him and that Wilson was shot almost as soon as he walked out of the door of the restaurant.

[12] The jury found Bond guilty of murder. On September 17, 2014, the trial court sentenced Bond to three hundred and sixty-five days for the carrying a handgun without a license conviction. On November 5, 2014, the trial court sentenced Bond to fifty-eight years for the murder conviction. The sentences were ordered to run concurrently. Bond now appeals.

# Discussion and Decision

## I. Sufficiency of the Evidence

[13] Bond first argues that there was insufficient evidence to support his conviction for murder because the State failed to disprove his claim of self-defense. When an appellant challenges the sufficiency of the evidence rebutting a claim of self-defense, we apply the same standard of review as that applied to sufficiency of the evidence claims generally. *McCullough v. State*, 985 N.E.2d 1135, 1138 (Ind. Ct. App. 2013). We neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* at 1139. We will not disturb the verdict if there is sufficient evidence of probative value to support the trier of fact's conclusion. *Id.* We will reverse only if we determine that no reasonable person could find that the State

presented sufficient evidence to negate self-defense beyond a reasonable doubt. *Id.* at 1138.

[14] Indiana Code section 35-41-3-2 provides that "[a] person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force." However, a person is not justified in using force if "the person has entered into combat with another person or is the initial aggressor unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action." I.C. § 35-41-3-2(g)(3). In addition, a defendant who raises a claim of self-defense is required to show three things: (1) he was in a place where he had a right to be; (2) he acted without fault; and (3) he had a reasonable fear of death or serious bodily harm. *Id*. The State then bears the burden of disproving at least one of these elements beyond a reasonable doubt. *Id*. "The State may meet this burden by rebutting the defense directly, by affirmatively showing the person did not act in self-defense, or by relying upon the sufficiency of its evidence in chief." *Id.* Whether the State has met its burden is a question of fact. *Id.*

[15] Bond claims that the State has failed to disprove any of the above three elements beyond a reasonable doubt. He claims that the evidence showed he acted in self-defense because the waitress on duty, Shontel Johnson, testified that Wilson walked out of the entrance of the Denny's towards Bond.

[16] However, Bond mischaracterizes the evidence. Dunbar testified that Bond was provoking Wilson from the moment they entered the Denny's, making comments about "old people" out at night. Tr. p. 19-22. A Denny's patron, Georgette Torres, testified that after the two men had argued loudly, Bond walked past Wilson and his table and shifted his pants to reveal his gun. *Id*. p. 70. She also testified that Bond flipped off Wilson with his middle finger and said they could take the argument outside. *Id.* at 71. The evidence also showed that, when Wilson did not respond to his invitation to come outside, Bond returned to provoke Wilson by tapping on the window next to his booth, first with his hand and then with his gun. Tr. p. 73-74. The evidence further showed that when Wilson still did not respond, Bond moved toward the front door of the Denny's. *Id.* at 24. The jury heard testimony that it was at that point that Wilson yelled "do not let that man back in," and headed towards the entrance. *Id.* at 25.

[17] Furthermore, although Bond argued that he shot Wilson because he would not stop coming towards him, both Dunbar and Tranbarger testified that Wilson had barely exited the Denny's before he was shot. *Id.* at 25, 315. It is clear from the above evidence that Bond had several opportunities to withdraw from any encounter, but chose instead to instigate a confrontation. *See McEwen v. State*, 695 N.E.2d 79, 90 (Ind. 1998) (evidence that a defendant was the initial aggressor and a willing participant in the violence can negate a claim of self-defense). Therefore, a reasonable jury could determine that Bond did not act in self-defense. Bond's request that we reverse his conviction based on Johnson's

testimony is a request for this court to reweigh the evidence and judge the credibility of witnesses, a request we decline.

# II. Sentencing

[18]     Bond next argues that his sentence is inappropriate in light of the nature of the offense and his character. On appeal, this Court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). However, this Court does not substitute its judgment for that of the trial court. *Foster v. State*, 795 N.E.2d 1078, 1092 (Ind. Ct. App. 2003). Under Appellate Rule 7(B), the question is not whether it is more appropriate to impose a different sentence upon the defendant, but whether the defendant's sentence is inappropriate. *Steinberg v. State*, 941 N.E.2d 515, 535 (Ind. Ct. App. 2011). The defendant bears the burden of persuading this Court that the sentence he received is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[19]     Regarding the nature of the offense, Bond instigated the confrontation with Wilson. He went into a Denny's displaying a gun he was not licensed to carry. While armed with this gun, Bond provoked an argument with Wilson. He told Wilson that he wanted to take their altercation outside. Bond then went outside the Denny's, where he had an opportunity to walk away, but instead he chose to tap on the window with his fist and his gun. When that did not get Wilson to come outside, he went back inside the Denny's entrance. When

Wilson left the Denny's, he was shot almost as soon as he walked out of the entrance. Wilson was shot three times, from at least three feet away, and any of the three shots would have been fatal. We do not find that Bond's sentence was inappropriate in light of the nature of his offense.

[20] In considering Bond's character, we note that Bond does have a criminal history. He has two prior felony convictions for receiving stolen property and theft. In addition, Bond was on probation at the time he committed the offense in the instant case. It is clear that Bond has not learned from his past experiences with the criminal justice system. The crime in the instant case is an escalation in severity from his past crimes, and it is clear that lenient sentences have not caused him to reconsider his behavior. We do not find that Bond's sentence was inappropriate in light of his character.

[21] The judgment of the trial court is affirmed.

Najam, J., and Friedlander, J., concur.