## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 03 2020, 8:56 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeffery Haupt
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jezia Noel Easton, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | August 3, 2020 <br><br> Court of Appeals Case No. 20A-CR-216 <br><br> Appeal from the St Joseph Superior Court <br><br> The Honorable Jeffrey L. Sanford, Judge <br><br> Trial Court Cause No. 71D03-1805-F3-327 |

**Tavitas, Judge.**

# Case Summary

Jezia Easton appeals his convictions for aggravated battery, a Level 3 felony; criminal recklessness, a Level 6 felony; and carrying a handgun without a license, a Class A misdemeanor. We affirm.

# Issue

Easton presents one issue for our review, which we restate as whether the State presented sufficient evidence to rebut Easton's claim of self-defense.

# Facts

On May 8, 2018, Easton and his father, Noel Easton ("Noel"), were shopping at a Lowe's store in South Bend. Upon their departure from the store, Easton and Noel encountered Demetrius Johnson ("Johnson") in the parking lot. The men know each other because Johnson's brother has been married to Noel's sister for thirty-five years.[1] Johnson was at Lowe's to obtain painting supplies and to retrieve his paycheck from his employer. Noel approached Johnson to talk, and Johnson informed Noel he would talk to Noel after Johnson finished speaking with his employer. While Noel waited for Johnson, Easton went to his parked vehicle and made a phone call to his brother.

---

[1] Per Noel's testimony, Johnson stole money from another son, Adrian Easton, three years prior to the incident at Lowe's. Tr. Vol. III p. 25.

[4] Johnson finished talking to his employer and walked a short distance across the parking lot to speak with Noel. Johnson and Noel embraced with a hug and handshake and began talking. While Noel and Johnson were talking, Easton retrieved a handgun from the glove compartment of his vehicle, exited the vehicle, and stood with Noel and Johnson. Johnson and Noel then began arguing. Johnson dropped the paint sticks in his hand and punched Noel one time in the head. Noel did not fall down as a result of the punch. Easton, however, pulled out the handgun and began shooting toward Johnson's feet. Witnesses testified they heard four or five shots.

[5] Johnson was shot once in the right tibia and collapsed to the ground. Two of the bullets also hit a metal cage containing propane tanks outside Lowe's. After the shooting, Easton and Noel got into their vehicle and exited the parking lot, leaving Johnson on the ground. The entire incident was recorded by the Lowe's security cameras.

[6] Witnesses called 911, and Sergeant Neil Graber and Officer Andrew Hines with the South Bend Police Department initiated a traffic stop[2] of Easton and Noel's vehicle. During the traffic stop, Officer Hines retrieved a black handgun on the driver's side floorboard of the vehicle. During an interview with officers at the police station, Easton admitted he shot Johnson.

[2] Officers were dispatched to the shooting at Lowe's and were provided a description of Easton's vehicle, a white SUV, which was also the description of Johnson's vehicle. Officers initiated two separate traffic stops of both white vehicles.

[7] The State charged Easton with Count I, carrying a handgun without a license, a class A misdemeanor; Count II, pointing a firearm, a Level 6 felony; Count III, battery by means of a deadly weapon, a Level 5 felony; Count IV, battery resulting in serious bodily injury, a Level 5 felony; Count V, criminal recklessness, a Level 6 felony; and Count VI, aggravated battery, a Level 3 felony.

[8] Easton's jury trial commenced on December 16, 2019. Easton pursued a theory of self-defense; however, the jury rejected Easton's claim of self-defense and found him guilty on all charged counts. Due to double jeopardy concerns, the trial court entered judgment of conviction only for carrying a handgun without a license, a class A misdemeanor; criminal recklessness, a Level 6 felony; and aggravated battery, a Level 3 felony. The trial court sentenced Easton to nine years to the Department of Correction with nine years suspended on Count VI, two years suspended on Count V, and 365 days suspended on Count I, all to run consecutively. Easton now appeals.

## Analysis

[9] Easton argues the evidence is insufficient to sustain his convictions because the State failed to rebut his claim of self-defense. The standard of review to challenge the sufficiency of the evidence to rebut a claim of self-defense is the same standard we use for any claim of insufficient evidence. *Quinn v. State*, 126 N.E.3d 924, 927 (Ind. Ct. App. 2019). To analyze a claim of insufficient evidence to support a conviction, we must consider only the probative evidence and reasonable inferences which support the judgment. *Sallee v. State*, 51

N.E.3d 130, 133 (Ind. 2016). "It is the factfinder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Id.* "When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements." *Wilson v. State*, 770 N.E.2d 799, 800 (Ind. 2002). The State may meet its burden by directly rebutting the defense, by showing the act was not in self-defense, or by relying on the sufficiency of its evidence in chief. *King v. State*, 61 N.E.3d 1275, 1283 (Ind. Ct. App. 2016), *trans. denied*. "If a defendant is convicted despite his claim of self-defense, this Court will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt." *Wilson*, 770 N.E.2d at 800-01.

[10]     A valid claim of self-defense is legal justification for an otherwise criminal act. *Coleman v. State*, 946 N.E.2d 1160, 1165 (Ind. 2011). Indiana Code Section 35-41-3-2(c) provides:

> A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. However, a person:
>
> (1) is justified in using deadly force; and
>
> (2) does not have a duty to retreat;
>
> if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or

the commission of a forcible felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary.

Indiana Code Section 35-31.5-2-85 defines deadly force as "force that creates a substantial risk of serious bodily injury." Shooting a handgun in Johnson's direction multiple times created a substantial risk of serious bodily injury. As such, we examine whether Easton was justified in using deadly force.

[11] A defendant is required to show three facts when they raise a claim of self-defense. The defendant must show he: (1) was in a place where he had a right to be; (2) acted without fault; and (3) had a reasonable fear of death or serious bodily injury. *McCullough v. State*, 985 N.E.2d 1135, 1138 (Ind. Ct. App. 2013) (citation omitted), *trans. denied*. A claim of self-defense is justified when a person reasonably believes that use of force is necessary to protect himself or a third person. *Hensen v. State*, 786 N.E.2d 274, 277 (Ind. 2003). "[T]he amount of force that an individual may use to protect himself must be proportionate to the urgency of the situation." *Pinkston v. State*, 821 N.E.2d 830, 842 (Ind. Ct. App. 2004), *trans. denied*. "When a person uses more force than is reasonably necessary under the circumstances, the right of self-defense is extinguished." *Id.*

[12] Easton argues that the State failed to negate his self-defense argument and that the evidence at trial was not sufficient to sustain the burden of proof. First, Easton failed to prove he acted without fault when he responded to his father's fistfight with deadly force. According to Easton, Johnson dropped the paint sticks he was carrying and hit Noel in the head. Easton, however, also testified

on cross-examination that he retrieved the handgun and approached the two men before the argument and altercation began. Accordingly, Easton failed to prove that he acted without fault because, by his own account, he retrieved a deadly weapon before Johnson and Noel argued and fought; he interjected himself into Johnson's and Noel's fisticuffs; and he responded to a thrown punch with deadly force.

[13] Easton failed to prove he was in reasonable fear of death or serious bodily injury when he shot Johnson. According to Easton, he was only threatened by the tone of Johnson's voice, which was "loud and angry". Tr. Vol. III p. 82. Although the Lowe's surveillance video does not provide a clear view of Johnson striking Noel in the head, it does show Johnson and Noel briefly engaged in a fistfight. This fistfight lasted only a few seconds, included just one punch, and did not hurt Noel. Johnson made no threatening action toward Easton or Noel that would prompt a reasonable fear of death or serious bodily injury to Easton or Noel. *See McCullough*, 985 N.E.2d at 1138. The tense conversation and single punch between Johnson and Noel are insufficient to justify Easton's use of deadly force against Johnson. Easton's use of deadly force was not proportionate to the threat. *See Pinkston*, 821 N.E.2d at 842. Because Easton used more force than was reasonably necessary under the circumstances, Easton's right of self-defense was extinguished. *Id.*

[14] Furthermore, we note that "[a] person claiming self-defense cannot reasonably base a belief that the threat is imminent on the actions of another who has withdrawn from the confrontation." *Henson*, 786 N.E.2d at 277. Easton

concedes he continued to fire at Johnson even after Johnson retreated from Noel.

[15] Ultimately, the State submitted sufficient evidence to negate Easton's self-defense claim. Easton's argument is merely a request that we reweigh the evidence, which we cannot do. *See Wilson*, 770 N.E.2d at 801 (rejecting appellant's argument that his use of deadly force was justified because appellant continued to shoot at a car that was attempting to leave the area).

## Conclusion

[16] The evidence is sufficient to support Easton's convictions for carrying a handgun without a license, a Class A misdemeanor, criminal recklessness, a Level 6 felony, and aggravated battery, a Level 3 felony. We affirm.

[17] Affirmed.

Riley, J., and Mathias, J., concur.