

FILED

Jun 19 2019, 8:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Rory Gallagher
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tiffany A. McCoy
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Herbert Quinn,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | June 19, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2256<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Marc T. Rothenberg, Judge<br><br>Trial Court Cause No.<br>49G02-1703-F1-9333 |

**Pyle, Judge.**

## Statement of the Case

[1] Herbert Quinn ("Quinn") appeals his conviction for attempted murder, a level 1 felony.[1] Specifically, Quinn challenges the sufficiency of the State's evidence to rebut his claim of self-defense. Concluding that the evidence is sufficient to rebut Quinn's self-defense claim, we affirm the trial court's ruling.

[2] We affirm.

# Issue

Whether sufficient evidence rebutted Quinn's self-defense claim.

# Facts

[3] The facts most favorable to the verdict are as follows. On March 6, 2017, Herbert Quinn drove to the home of Darryl Boone ("Boone") and his fiancé, Kendra King ("King"). Quinn was accompanied by two of King's sisters, Katisha Holland ("Holland") and Monica Walker ("Walker"). Quinn, Walker, and Holland later testified that they went to Boone's and King's home to talk to them about a Facebook post that had caused them to become alarmed. Walker testified that she believed Quinn wanted to see Boone to "beat him up." (Tr. Vol. 3 at 14).

[4] Boone's front door has a glass screen door that opens outward and a main door that opens inward. While Holland and Walker stood in the driveway, Quinn

---

[1] Ind. Code. § 35-42-1-1(a).

approached the front door of Boone's home, opened the glass screen door, and knocked multiple times. In between knocking, Quinn walked around the exterior of the home. Each time Quinn knocked, Boone asked who was knocking, but Quinn never replied. Quinn had with him a silver handgun, which he removed periodically from his waistband and held in his hands.

[5] Inside the home, Boone suspected "something funny" was going on, so he armed himself with a handgun and went to the front door. (Tr. Vol. 2 at 81). When Quinn saw Boone begin to open the main door inward, he stepped backward and raised his gun. Boone then opened the glass screen door outward and stepped outside with a handgun. Both men raised their handguns toward each other. Quinn fired at least two shots, one of which shattered the glass screen door behind Boone, and the other of which struck Boone on his left side, breaking two ribs and puncturing his lung. Boone required hospitalization and surgery.

[6] At the hospital, Boone talked to Detective Jerry Townsend ("Detective Townsend") of the Indianapolis Metropolitan Police Department ("IMPD"). During Detective Townsend's investigation, he learned that a security camera set up outside Boone's home captured video clips of the shooting. The angle of the video shows the exterior of the front door from a slanted, aerial view. The video recording is motion-activated; the camera records clips in six-second increments upon the detection of movement. At Detective Townsend's request, King played several incremental video clips on her iPhone for Detective Townsend to view. Detective Townsend asked King to send him the relevant

video clips capturing "from the time [Quinn, Walker, and Holland] arrived until the time the shooting happened." (Tr. Vol. 2 at 187). The next day, King emailed approximately 16 of the incremental clips to Detective Townsend. IMPD later combined the clips into a single sequence. (*See* State's Ex. 4).

# Decision

[7] On appeal, Quinn presents two arguments regarding the sufficiency of the State's rebuttal evidence: first, that the State failed to present evidence to rebut the specific elements of self-defense; and second, that indisputable video evidence contradicts the State's rebuttal and necessitates reversal. We will consider each argument in turn.

### 1. State's Rebuttal of Quinn's Claim of Self-Defense

[8] A valid claim of defense of oneself or another person is legal justification for an otherwise criminal act. Ind. Code § 35-41-3-2(a); *Wallace v. State*, 770 N.E.2d 799, 800 (Ind. 2002). To prevail on a claim of self-defense, the defendant must show that he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Id.*; *Kimbrough v. State*, 811 N.E.2d 621, 635 (Ind. Ct. App. 2009). Once a defendant raises a claim of self-defense, the State has the burden of negating at least one of the necessary elements. *Kimbrough*, 811 N.E.2d at 635; *Miller v. State*, 720 N.E.2d 696, 700 (Ind. 1999). The State may meet its burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by relying on the sufficiency of the

case-in chief. *Id*. Whether the State has met its burden is a question for the trier of fact. *Id*.

[9] The standard for reviewing a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same standard used for any claim of insufficient evidence. *Id*. at 699; *Wilson*, 700 N.E.2d at 802. We neither reweigh the evidence nor judge the credibility of witnesses. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We will reverse a conviction only if no reasonable person could say that the State negated the defendant's self-defense claim beyond a reasonable doubt. *Id*.; *Wilson*, 700 N.E.2d at 800-01. The evidence is sufficient if an inference may be reasonably drawn from it to support the verdict. *Drane*, 867 N.E.2d at 147.

[10] Here, the State presented sufficient evidence to rebut Quinn's claim of self-defense. At trial, the State presented evidence that Quinn went to Boone's home angry and planning to hurt Boone, walked around outside Boone's home carrying a loaded gun, knocked several times and refused to respond when Boone repeatedly asked who was outside, and drew his gun before Boone opened the door. This evidence alone supports a finding that Quinn provoked, instigated, or willingly participated in the violence that subsequently ensued. Accordingly, the State's evidence is sufficient to negate an element of Quinn's self-defense claim and satisfy the State's burden. *See Kimbrough*, 811 N.E.2d at 635 (explaining the State's burden to negate at least one of the elements of self-defense). For that reason alone, Quinn's argument fails.

## 2. Appellate Review of Video Evidence

[11] Quinn also argues that video evidence indisputably contradicts the State's rebuttal of certain elements of his self-defense claim, specifically whether he was the initial aggressor and whether he reasonably feared serious bodily injury or death. Quinn argues that the State did not rebut these elements because he "was facing a loaded gun" when he shot Boone. (Appellant's Br. at 7). He asks us to "rely on the video evidence alone" to "resolve conflicts" between Quinn's and Boone's testimonies, contending that the video evidence indisputably contradicts the trial court's verdict. (Appellant's Br. at 9). We disagree.

[12] Generally, an appellate court gives "almost total deference" to a trial court's factual determinations regarding credibility of witnesses and weight of evidence. *Love v. State*, 73 N.E.3d 693, 699 (Ind. 2017); *see also Drane*, 867 N.E.2d at 146. In *Love*, our supreme court recognized a narrow exception to this general rule, holding that "in those instances where video evidence indisputably contradicts the trial court's findings, relying on such evidence and reversing the trial court's findings do not constitute reweighing." 73 N.E.3d at 699. The instances contemplated by this exception are "rare" and "must be such that no reasonable person could view the video and conclude otherwise." *Id*. When determining whether video evidence indisputably contradicts a trial court's determination, we consider the video quality, including the angle, lighting, graininess, and "whether the video is a complete depiction of the events at issue[.]" *Id*. In cases where the video "is somehow not clear or

complete or is subject to different interpretations," we must defer to the trial court's interpretation. *Id*. at 699-700.

[13] Here, we must defer. The compilation of video clips in the State's Exhibit 4 falls far short of the *Love* criteria for indisputability, as it is neither clear nor complete and is subject to different interpretations. In his brief, Quinn concedes that the video is "incomplete in the sense that it only shows footage from outside the house," and he asks us to fill in "these gaps" using trial testimony. (Appellant's Br. at 9). Quinn apparently misapprehends our standard of review. As this is not a case where the video evidence indisputably contradicts the trial court's determination, we cannot apply the exception carved out in *Love*. Accordingly, we must defer to the trial court's factual determinations regarding weight of evidence and credibility of witnesses. *See Love*, 73 N.E.3d at 700.

[14] Because the State presented sufficient evidence to rebut at least one element of Quinn's self-defense claim, and we do not find that the video evidence indisputably contradicts the jury's factual determinations, we will not disturb the jury's verdict.

[15] We affirm.

Najam, J., and Altice, J., concur.