## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 31 2020, 9:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Samantha M. Sumcad
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Alexzander F. Dutton,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | January 31, 2020<br><br>Court of Appeals Case No.<br>19A-CR-799<br><br>Appeal from the Clinton Superior Court<br><br>The Honorable Justin H. Hunter, Judge<br><br>Trial Court Cause No.<br>12D01-1710-F3-1094 |

**Crone, Judge.**

# Case Summary

[1] Alexzander F. Dutton appeals his conviction for level 3 felony aggravated battery and his two convictions for level 5 felony battery. He argues that the State failed to present sufficient evidence to rebut his self-defense claim, that the prosecutor committed misconduct resulting in fundamental error, and that his convictions violate constitutional protections against double jeopardy. We conclude that the State presented sufficient evidence to rebut Dutton's self-defense claim and that any error committed by the prosecutor was not fundamental. However, we conclude, and the State acknowledges, that remand to vacate Dutton's level 5 felony convictions is required to avoid double jeopardy concerns. Accordingly, we affirm Dutton's conviction for level 3 felony aggravated battery and remand with instructions to the trial court to vacate his level 5 felony battery convictions.

# Facts and Procedural History[1]

[2] The facts most favorable to the verdicts show that on the night of September 30-October 1, 2017, Dutton and his friend Ricky Deck went to a bar in Mulberry. Carl Boldenow was also at the bar. Both Dutton and Boldenow consumed alcoholic beverages. At some point, Boldenow, his friend Janelle Stingley, and Stingley's cousin Jenny Brettnacher went outside to smoke. Upon their return, they encountered Dutton and Deck standing outside in front of the bar.

---

[1] Many of the citations to the transcript in Dutton's appellant's brief are incorrect, which hindered our review.

Boldenow, Dutton, and Deck engaged in casual conversation, which began as joking and then became personal. Both Dutton and Boldenow became angry, but it did not appear that they were about to engage in a physical fight. Tr. Vol. 1 at 172. Dutton and Deck went back inside the bar. Deck told a bartender that there might be a problem but did not specify what that problem might be. Dutton approached the bartender and told her that there was no problem and everything was okay. *Id*. at 160.

[3] About twenty or thirty minutes later, Dutton and Deck decided to leave the bar to get Dutton's girlfriend Ashley Oliver and because Dutton wanted to work on his truck. Tr. Vol. 2 at 119. They exited the bar and walked near a bonfire where Boldenow, Stingley, and Brettnacher were standing. Dutton and Boldenow began "exchanging words" and threatening to kick each other's butt. Tr. Vol. 1 at 194. Dutton and Deck turned back toward Boldenow, and Boldenow started walking toward them. Stingley "jumped in to try to stop the whole situation." *Id*. at 195. Stingley grabbed the back of Boldenow and told him to stop and that the arguing was unnecessary. *Id*. at 194. Stingley yelled for Brettnacher, who came to stand in front of Boldenow. Stingley released Boldenow, walked up to Dutton, and said, "Just go home. Like this is stupid. You guys are fighting for nothing." *Id*. at 195. Dutton and Deck walked away. Boldenow, Stingley, and Brettnacher went back into the bar, and then Stingley and Brettnacher went home.

[4] Dutton and Deck returned to the bar with Oliver about thirty minutes to an hour after they left. Tr. Vol. 2 at 184. Dutton had been working on his truck

that day and had some of the tools he had used in his pockets. *Id*. at 171, 184. Prior to and at the time of Dutton's return, Toby Hamilton and Justin Ecenbarger were standing outside the bar door. Hamilton and Ecenbarger knew Boldenow, but they did not know Dutton. While Hamilton and Ecenbarger were standing there, Ecenbarger saw Boldenow walk from Boldenow's truck to the bar's entrance. As Boldenow was about to go in the door to the bar, a group of people outside the bar, including Dutton, started to have "words" with Boldenow. Tr. Vol. 1 at 228. Boldenow and Dutton were "calling each other a pussy." *Id*. at 229. Hamilton also heard Boldenow "getting into it" with another person, whom Hamilton later learned was Dutton. *Id*. at 246. Hamilton noticed that Dutton was near the retaining wall by the bar door, and then Dutton "backed off into the parking lot a little bit." *Id*.

[5] Hamilton and Ecenbarger were just going to depart, when Dutton said something apparently offensive to Boldenow. *Id*. at 247. Ecenbarger said to Boldenow, "[L]et's just turn around and go in the bar." *Id*. at 230. As he said this, Ecenbarger had his hands on Boldenow, but Boldenow was not making eye contact with him; Boldenow was looking over Ecenbarger's shoulder, and Ecenbarger could "see in his eye that they [i.e., Boldenow and Dutton] were gonna have a scuffle." *Id*. Hamilton was standing between Dutton, who was in front of him, and Ecenbarger and Boldenow, who were somewhere behind him. Hamilton observed Dutton trying to get something out of his pants pocket and said, "[H]ey what do you have in your pocket there?" *Id*. at 231, 247.

Hamilton saw Dutton pull something out of his pants pocket that had a handle with metal, which was later identified as a ball-peen hammer. *Id*. at 248. When Ecenbarger heard Hamilton say, "[H]ey what do you have in your pocket there," Ecenbarger turned away from Boldenow. *Id*. at 231. Hamilton noticed Boldenow come around his right and move toward Dutton. Hamilton thought that Boldenow "was trying to get his hands on [Dutton] for something … just trying to grab him." *Id*. at 248. When Ecenbarger realized that Dutton had something in his right hand, Ecenbarger thought things were getting "a little out of hand" and decided to go back into the bar. *Id*. at 231. Hamilton saw Dutton hit Boldenow on the head with the hammer. *Id*. at 249. As Ecenbarger was walking in the door to the bar, he heard "like a melon smack" and Hamilton say, "[W]hat did you do that for?" *Id*. at 232.

[6] Hamilton observed Dutton, Deck, and Oliver walk away. Boldenow was lying on the ground bleeding, and "it was bad." *Id*. at 249. As Dutton was walking away from the bar, Bryson Hamilton, who was taking out the trash, heard Dutton say, "[T]hey're gonna take me to jail[,]" or, "I'm going to jail." *Id*. at 184. Police later discovered Dutton's hammer in a dumpster outside the bar.

[7] Boldenow was rushed to the hospital, where he underwent an emergency craniotomy for his injury and was put on a ventilator. He remained hospitalized for a week. As a result of the injury inflicted by Dutton, Boldenow suffers permanent hearing loss, permanent speech problems, memory loss, and severe headaches. Boldenow remembers very little about the night he was injured.

The State charged Dutton with level 3 felony aggravated battery causing serious permanent disfigurement or protracted loss or impairment of the function of a bodily member or organ, level 5 felony battery resulting in serious bodily injury, and level 5 felony battery by means of a deadly weapon. A jury trial was held. As part of the State's case-in-chief, Stingley, Ecenbarger, Hamilton, and Boldenow, among others, testified. At the close of the State's evidence, Dutton moved for judgment on the evidence, arguing in part that the State's evidence showed that he had acted in self-defense. The trial court denied the motion, and Dutton proceeded to present his case. He testified, and his counsel argued to the jury that Dutton acted in self-defense. The jury found Dutton guilty as charged.

The trial court entered judgment of conviction on all three counts. For his level 3 felony aggravated battery conviction, the trial court sentenced Dutton to eight years, with five years executed and three years on probation. The trial court indicated that it would "merge" the two level 5 felony convictions with the level 3 felony conviction "for purposes of sentencing" to avoid a double jeopardy violation. Tr. Vol. 3 at 56. This appeal ensued.

## Discussion and Decision

### Section 1 – The evidence is sufficient to rebut Dutton's self-defense claim.

Dutton asserts that the State failed to present sufficient evidence to rebut his self-defense claim. The standard of review for a challenge to the sufficiency of

evidence to rebut a self-defense claim is the same as the standard for any sufficiency claim. *Wilson v. State*, 770 N.E.2d 799, 801 (Ind. 2002). We neither reweigh the evidence nor judge the credibility of witnesses. *Id*. We will affirm the conviction unless, considering only the evidence and reasonable inferences favorable to the judgment, no reasonable factfinder could have found that the State disproved self-defense beyond a reasonable doubt. *Carroll v. State*, 744 N.E.2d 432, 433 (Ind. 2001).[2]

[11] Self-defense is a legal justification for an otherwise criminal act. *Bryant v. State*, 984 N.E.2d 240, 250 (Ind. Ct. App. 2013), *trans. denied*. "A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force." Ind. Code § 35-41-3-2(c). Further, a person "is justified in using deadly force[, and] does not have a duty to retreat[,] if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony." *Id*. "'Deadly force' means force that creates a substantial risk of serious bodily injury." Ind. Code § 35-31.5-2-85. Here, there appears to be no dispute that Dutton's self-defense claim involved force creating a substantial risk of serious bodily injury, and therefore he was required to show that he was justified in

---

[2] Dutton incorrectly asserts that an appellate court will consider any uncontested evidence favorable to the defendant, citing *Hathaway v. State*, 906 N.E.2d 941, 944 (Ind. Ct. App. 2009), *trans. denied*. Appellant's Br. at 18. The standard of review from *Hathaway* on which Dutton relies applies to a trial court's ruling on the admissibility of the evidence. 906 N.E.2d at 944. Here, our review is for the sufficiency of the evidence, and therefore the standard of review in *Hathaway* is inapplicable.

using deadly force. To prevail on a claim of self-defense involving deadly force, Dutton was required to show that "(1) he was in a place where he had a right to be; (2) he acted without fault; and (3) he had a reasonable fear of death or [serious bodily injury]." *Coleman v. State*, 946 N.E.2d 1160, 1165 (Ind. 2011).[3] "When a claim of self-defense is raised and finds support in the evidence, the State bears the burden of negating at least one of the necessary elements." *King v. State*, 61 N.E.3d 1275, 1283 (Ind. Ct. App. 2016), *trans. denied* (2017). The State may meet its burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by relying on the sufficiency of the case-in chief. *Quinn v. State*, 126 N.E.3d 924, 927 (Ind. Ct. App. 2019).

[12] Self-defense involves both a subjective and an objective component. *Washington v. State*, 997 N.E.2d 342, 349 (Ind. 2013). A defendant must honestly believe that force is necessary to protect himself from serious bodily injury, and that belief must be objectively reasonable, i.e., it must be one that a reasonable person would have in those circumstances. *Id*. "A person who provokes, instigates, or participates willingly in the violence does not act without fault for the purposes of self-defense." *Richardson v. State*, 79 N.E.3d 958, 964 (Ind. Ct. App. 2017). Also, "[a] claim of self-defense will fail if the person 'uses more

---

[3] While a reasonable fear of death or serious bodily injury is required in a case involving deadly force, "when a case does not involve deadly force, a defendant claiming self-defense must only show that he was protecting himself from what he 'reasonably believe[d] to be the imminent use of unlawful force.'" *Dixson v. State*, 22 N.E.3d 836, 839 (Ind. Ct. App. 2014) (quoting Ind. Code § 35-41-3-2(c)), *trans. denied* (2015).

force than is reasonably necessary under the circumstances.'" *Weedman v. State*, 21 N.E.3d 873, 892 (Ind. Ct. App. 2014) (quoting *Sudberry v. State*, 982 N.E.2d 475, 481 (Ind. Ct. App. 2013)), *trans. denied* (2015). "The trier of fact is not precluded from finding that a person used unreasonable force simply because the victim was the initial aggressor." *McCullough v. State*, 985 N.E.2d 1135, 1138 (Ind. Ct. App. 2013).

[13] The evidence and the reasonable inferences favorable to the verdicts indicate that Dutton and Boldenow had multiple verbal confrontations that evening. Dutton chose to return to the bar with Deck and Oliver, and Dutton willingly engaged in another verbal argument with Boldenow. During their exchange of insults, Dutton reached into his pocket to take out a hammer. Boldenow was angry and moved toward Dutton, but there was no indication that Boldenow was armed, and Dutton's friend was present, so Dutton was not outnumbered. When Boldenow was close enough to Dutton, Dutton struck Boldenow on the head with a ball-peen hammer, causing Boldenow to lose consciousness and bleed profusely from a laceration on his head. Boldenow did not strike or physically assault Dutton. The jury saw and heard both Dutton and Boldenow. The jury was required to consider whether under all the circumstances a reasonable person in Dutton's position would have felt that he was in imminent danger of serious bodily injury and whether the use of deadly force was reasonable. We conclude that there was sufficient evidence to support a conclusion that a reasonable person in these circumstances would not have felt that he was in imminent danger of serious bodily injury and that striking

Boldenow on the head with a ball-peen hammer constituted excessive force under the circumstances. Dutton's argument is merely a request to reweigh the evidence, which we must decline. Accordingly, we conclude that there was sufficient evidence to rebut Dutton's self-defense claim.

## Section 2 – The prosecutor's closing argument did not result in fundamental error.

[14] In the midst of his sufficiency argument, Dutton contends that the prosecutor committed fundamental error during closing argument by inappropriately shifting the burden of proof to Dutton. Where, as here, a claim of prosecutorial misconduct has been waived by the defendant's failure to preserve the issue, the defendant must establish not only the grounds for prosecutorial misconduct but also that the prosecutorial misconduct constituted fundamental error.[4] *Ryan v. State*, 9 N.E.3d 663, 667-68 (Ind. 2014). "Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to 'make a fair trial impossible.'" *Id*. at 668 (quoting *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002)). A fundamental error is one that "make[s] a fair trial impossible or constitute[s] a clearly blatant violation of basic and elementary principles of due process presenting an undeniable and substantial potential for harm." *Durden v. State*, 99 N.E.3d 645, 652 (Ind. 2018) (quoting

---

[4] To preserve a claim of prosecutorial misconduct, the defendant must request an admonishment to the jury at the time the alleged misconduct occurs, and if further relief is desired, move for a mistrial. *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014).

*Knapp v. State*, 9 N.E.3d 1274, 1281 (Ind. 2014), *cert. denied* (2015)) (alterations in *Durden*).

[15] Dutton takes issue with the following portion of the prosecutor's closing argument:

> And as you're considering the evidence and deciding whether or not I have met my burden for proof beyond a reasonable doubt that the accused committed the crimes that he's accused of in this case. Then if there's any doubt that I have reached my burden you give the benefit of that doubt to the defendant. Probably guilty. May be guilty. Is not guilty. In the accusation of a crime in a court of law. So I'm asking you in your consideration of things to be more balance[d]. *To be equitable.* To be fair to all people involved in this matter. Including the victim. Including the witnesses. Including the defendant. And I mean that in a general sense of this is not an opportunity for you to decide who are the angels and who are the demons.

Tr. Vol. 2 at 229 (emphasis added).

[16] Dutton claims that asking the jury to be "equitable" in weighing matters impermissibly shifted the burden of proof to him. Assuming, without deciding, that the prosecutor's request that the jury be "equitable" was inappropriate, any error is certainly not fundamental. Just before making the allegedly improper statement, the prosecutor told the jury that the State had the burden of proof and that the defendant must get the benefit of any doubt. Then, shortly after making the statement, the prosecutor said, "Your review of the evidence is an objective review of the evidence whether or not I have met my burden. And as to the claim of self[-]defense I have a burden of disproving that by proof beyond

a reasonable doubt as well." *Id*. Considering the allegedly improper statement in context, we have no difficulty concluding that any possible error would not constitute a clearly blatant violation of basic and elementary principles of due process or present an undeniable and substantial potential for harm.

## Section 3 – Remand is appropriate to vacate the level 5 felony convictions.

[17] Dutton argues, and the State concedes, that all three battery counts were based on the same act of battery, namely, Dutton's act of striking Boldenow on the head with the hammer. The trial court entered judgment of conviction on all three battery counts, but based on double jeopardy concerns, did not sentence Dutton on the level 5 felony convictions. Merging the convictions at sentencing is insufficient to cure the double jeopardy violation; the convictions must be vacated. *Bass v. State*, 75 N.E.3d 1100, 1103 (Ind. Ct. App. 2017). Accordingly, we remand to the trial court with instructions to vacate Dutton's level 5 felony convictions.

[18] Affirmed in part and remanded.

May, J., and Pyle, J., concur.