## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



FILED

Mar 06 2020, 10:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Daniel Hagemen
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samantha M. Sumcad
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Curtis Lowder,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

March 6, 2020

Court of Appeals Case No.
19A-CR-964

Appeal from the
Marion Superior Court

The Honorable
Jeffrey L. Marchal, Magistrate

Trial Court Cause No.
49G06-1803-F5-7976

**Kirsch, Judge.**

[1] Curtis Lowder ("Lowder") appeals from the trial court's revocation of his

probation, raising three issues on appeal, which we restate as:

I. Whether the State presented sufficient evidence to rebut Lowder's claim of self-defense;

II. Whether Lowder's right to due process was violated because the offense alleged in the notice of probation violation was not the same offense upon which the trial court revoked Lowder's probation; and

III. Whether the trial court abused its discretion in ordering Lowder to serve the remainder of his three-year sentence in the Indiana Department of Correction ("the DOC").

We affirm.

## Facts and Procedural History

On July 23, 2018, Lowder pleaded guilty to battery resulting in serious bodily injury as a Level 5 felony. *Appellant's App. Vol. II* at 12, 52-54. The trial court imposed a three-year sentence, to be served in the Duvall Residential Center ("the DRC"), a Marion County Community Corrections facility. *Id*. at 12, 16-19, 75.

On February 19, 2019, around 5:15 p.m., Lowder was asleep in his top bunk in the DRC. *State's Ex. 1*; *Tr. Vol. II* at 7-8. Ernest Allen ("Allen") was lying in the bunk immediately below. *State's Ex. 1*; *Tr. Vol. II* at 8. Community Corrections Officer Teanna White ("White") was conducting a head count and saw a black hoodie hanging from Allen's bunkbed; White took it down and handed it to Allen. *Appellant's App. Vol. II* at 102. She asked Allen if it was his and told Allen that the hoodie should not be hanging from the bunkbed. *Id*.

Allen threw the hoodie onto the top bunk where Lowder was sleeping. *Id*. Lowder sat up and flipped his blanket, so it was hanging partially off his bunk and into the space above Allen's bunk. *Id*. Allen and Lowder argued about Lowder's blanket hanging off the edge of his bed, so Lowder grabbed the blanket and pulled it back on himself. *Tr. Vol. II* at 23-24. Lowder was sitting partially upright. *State*'s *Ex. 1*. Moments later, Allen got out of his bunkbed, stood up, and slapped Lowder's face. *State's Ex. 1*; *Tr. Vol. II* at 24. Lowder did not lie down to protect himself or call for help. *State's Ex. 1*; *Tr. Vol. II* at 14. Instead, Lowder immediately sat fully upright, swung his fist at Allen, and then jumped out of his top bunk and landed right in front of Allen, who was still standing next to the bunkbed. *State's Ex. 1*; *Tr. Vol. II* at 14, 25-26. Both men began throwing punches at each other; they grappled for a few seconds, and then Allen threw Lowder to the floor. *State's Ex.* 1; *Tr. Vol. II* at 9, 17, 24. While Lowder was lying on his back, Allen tried to attack him, and Lowder kicked at Allen to fend him off. *State's Ex. 1*; *Tr. Vol. II* at 24-25. Two correctional officers broke up the fight. *State's Ex. 1*; *Tr. Vol. II* at 9-10. The surveillance camera in the DRC dorm captured the fight on video. *State's Ex. 1*.

[5] Relying on these facts, the State filed a notice of violation of probation against Lowder, alleging that he had "failed to comply with the rules and regulations of DRC regarding *battery*." *Appellant's App. Vol. II* at 8, 102 (emphasis added). At the revocation hearing, the State entered the DRC Resident Handbook ("the Handbook") into evidence. *State's Ex. 2*; *Tr. Vol. II* at 4. At that time, the Handbook prohibited battery under Rule 212, and it prohibited disorderly

conduct under Rule 236. *Tr. Vol. II* at 15. The Handbook defined battery as follows: "212. Assault/Battery – Committing a battery/assault upon another person without a weapon or inflicting bodily injury." *State's Ex. 2*. The Handbook defined disorderly conduct as follows: "236. Disorderly Conduct (Class B) – Disorderly conduct: exhibiting disruptive and/or violent conduct which disrupts the security of the facility or other area in which the offender is located." *Id.*

[6] Both White and Corrections Officer Roney Brown ("Brown") testified that they did not see the fight between Lowder and Allen commence but that they did see the two men fighting, with White testifying that she saw Lowder and Allen "already in full action . . . just fighting[,]" and Brown testifying that he saw "fists flying" moments before he separated Lowder and Allen. *Tr. Vol. II* at 9-12, 17-18. Lowder testified that a) he jumped off his top bunk after Allen slapped him to better protect himself against Allen and other potential attackers; and b) he neither swung at, nor struck, Allen, though he did admit to grabbing Allen. *Id.* at 25-27. During the hearing, the trial court reviewed the video of the incident. *Id.* at 6.

[7] At the conclusion of the hearing, the trial court revoked Lowder's probation, concluding that Lowder committed disorderly conduct, not battery, the offense the State had alleged in the notice of probation violation.[1] *Id.* at 29. In deciding

---

[1] We acknowledge that the following language from the trial court's ruling could be construed as a finding that Lowder committed battery: "If I'm looking at it on strength of evidence, I think offense 212, assault and

what sanction to impose, the trial court stated that since Lowder had once before violated the terms of this probation, he was on "strict compliance." *Id.* at 30-31. The trial court also observed that "[Lowder] has been a problem on [the DRC] since the day he got there," so it ordered Lowder to serve the remainder of his sentence – 766 days – in the DOC. *Id.* Lowder now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

## I. Sufficiency of Evidence

Lowder argues there was insufficient evidence to support the revocation of his probation because the evidence showed that he acted in self-defense. A revocation hearing is in the nature of a civil proceeding, and the alleged violation only needs to be proven by a preponderance of the evidence. *Smith v. State*, 727 N.E.2d 763, 765 (Ind. Ct. App. 2000). When reviewing the sufficiency of the evidence at a revocation hearing, we neither reweigh the evidence nor judge the credibility of witnesses. *Id.* We will affirm the revocation if, considering only the probative evidence and reasonable inferences therefrom, there is sufficient evidence supporting the conclusion that the

---

battery, is weaker by virtue of the fact that it's clear that Mr. Allen is the instigator of the battery, but from what I saw it looked like then it becomes mutual combat at some point, and if that's not battery, it's certainly disorderly conduct . . . ." *Tr. Vol. II* at 29. However, because we find that there was no violation of due process in the finding of disorderly conduct, we do not reach whether such language was sufficient.

probationer has violated a condition of his probation. *Hubbard v. State*, 683 N.E.2d 618, 620 (Ind. Ct. App. 1997).

[9] The standard for reviewing the sufficiency of evidence to rebut a claim of self-defense claim is the same standard used for any claim of insufficient evidence. *Quinn v. State*, 126 N.E.3d 924, 927 (Ind. Ct. App. 2019). We neither reweigh the evidence nor judge the credibility of witnesses. *Id*. We will reverse a conviction only if no reasonable person could say the State negated the defendant's self-defense claim beyond a reasonable doubt. *Id*. The evidence is sufficient if an inference may be reasonably drawn from it to support the verdict. *Id*. A valid claim of self-defense is legal justification for an otherwise criminal act. *Id*. To prevail on this claim, Lowder was required to show that he: 1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm. *Id*. The State carries the burden of negating at least one of the necessary elements of a self-defense claim. *Id*. The State may meet its burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by relying on the sufficiency of the case-in chief. *Id.*

[10] In support of his self-defense claim, Lowder correctly observes that Allen instigated the confrontation by slapping Lowder in the face. Lowder claims this placed him in a situation where he had to defend himself against more attacks from Allen and other persons who might join Allen's attack against Lowder.

Lowder says this explains why, after Allen slapped him, he immediately leapt from his bed to face Allen.

[11] In reviewing Lowder's claim, we have examined not only the testimony from the hearing but also the video of the incident. *See State's Ex. 1*. By merely reviewing video evidence, we are not impermissibly reweighing the evidence. *Robinson v. State*, 5 N.E.3d 362, 366 (Ind. 2014). "Rather, we consider video evidence admitted in the trial court to be a necessary part of the record on appeal, just like any other type of evidence." *Id.*

[12] Here, we find that the State presented sufficient evidence to negate at least one element of Lowder's self-defense claim, that is, his claim that he did not participate willingly in the fight with Allen. *Quinn*, 126 N.E.3d at 927. Lowder is correct that the undisputed evidence shows that Allen was the instigator, slapping Lowder in the face while Lowder was sitting in the top bunk of the bunkbed. However, Lowder did not lie down to protect himself or call for help. *Tr. Vol. II* at 14; *State's Ex. 1*. Instead, after Allen slapped him, Lowder immediately sat upright, swung his fist at Allen, and jumped out of his top bunk to face Allen. *Tr. Vol. II* at 14, 26; *State's Ex. 1*. Even if Allen had the upper hand during most of the fight, the trial court could have concluded that when Lowder sat upright in his bunk, swung at Allen, and jumped off his bed, Lowder participated willingly in the fight with Allen and was not acting in self-defense. *See Quinn*, 126 N.E.3d at 927. Thus, the evidence negates at least one element of Lowder's self-defense claim, and the evidence was sufficient to support the revocation of his probation. *See id.*; *Smith*, 727 N.E.2d at 765.

# II. Due Process

[13] Lowder argues that the trial court denied his right to due process by revoking his probation based on a finding that Lowder committed disorderly conduct when the notice of probation violation alleged a different offense, battery. The State responds by asserting that because the notice of violation and the trial court's revocation decision were based on the same conduct – Lowder's fight with Allen -- Lowder received adequate notice of his violation, so the revocation of his probation did not violate Lowder's right to due process.

[14] The notice of violation alleged that Lowder failed to comply with the DRC rules and regulations regarding battery. *Appellant's App. Vol. II* at 102. The notice provided the following description of the alleged incident:

> On 2/19/2019, at approximately 5:17 PM, while conducting count at DRC, . . . White saw a black hoodie hanging and took it down and handed it to [Allen] . . . and asked [him] if it was [his] and stated that it shouldn't be hanging from bunks. As . . . White continued with count [Allen] threw the black hoodie that . . . White had handed [him] onto the top bunk where [Lowder] was sleeping. [Lowder] sat up and flipped [the] blanket back. At that time, [Allen] stood up and proceeded to slap [Lowder] in the face. [Lowder] jumped off the bunk with a punch directed at [Allen]. [Brown] walked in the dorm and saw that [Allen] was standing up punching at [Lowder], and [Lowder] was on the ground kicking at [Allen]. [Brown] then stepped in between both [Allen] and [Lowder] to stop them from fighting. CCOs Nicholas Weitzel and Harold Colebert responded and assisted in placing [Lowder] and [Allen] in mechanical restraints. Both [Lowder] and [Allen] were then escorted to the holding cell.

*Id*. It is undisputed that the State presented evidence at the hearing that established all the facts alleged in the notice of violation. *Tr. Vol. II* at 4-27. The trial court revoked Lowder's probation, finding that he had committed disorderly conduct. *Id.* at 29.

[15] Probation revocation implicates a defendant's liberty interests, which entitles him to some procedural due process, but a defendant is not entitled to full due process rights, as probation revocation does not deprive defendant of an absolute liberty but only a conditional liberty. *Parker v. State*, 676 N.E.2d 1083, 1085 (Ind. Ct. App. 1997). A defendant in community corrections is entitled to written notice of the claimed violation of the terms of his placement, disclosure of the evidence against him, the opportunity to be heard and present evidence, and the right to confront and cross-examine adverse witnesses in a neutral hearing before the trial court. *Davis v. State*, 669 N.E.2d 1005, 1008 (Ind. Ct. App. 1996), *trans. denied*. The written notice of the claimed probation violation must be sufficiently detailed to permit the probationer to prepare an adequate defense to that charge. *Long v. State*, 717 N.E.2d 1238, 1240 (Ind. Ct. App. 1999). "Basing a probation revocation upon claimed violations for which the defendant had received no notice is error because it violates due process." *Bussberg v. State*, 827 N.E.2d 37, 44 (Ind. Ct. App. 2005), *trans. denied*.

[16] A defendant's probation may not be revoked based upon proof of an act that is merely similar in nature to the violation charged in the written notice; here, the offenses of battery and disorderly conduct could be considered similar. *See Long*, 717 N.E.2d at 1239-41. In *Long*, the State alleged that Long violated a

condition of probation because he "tampered" with his home detention electronic transmitter ("transmitter"), violating a term of probation that did not allow a probationer to either tamper with or fix a transmitter. 717 N.E.2d at 1239. At the revocation hearing, Long admitted that he had taped and glued the transmitter but only because the transmitter was damaged. *Id*. at 1240. Thus, Long argued that taping and gluing the transmitter did not constitute tampering. *Id*. The trial court found no evidence of tampering but nonetheless revoked Long's probation because he had "fixed" the transmitter. *Id*. We reversed, finding that inadequate notice hindered Long's defense because if the notice had alleged that Long had "fixed" the transmitter, he would not have admitted at the revocation hearing that he had taped and glued the transmitter. *Id*. at 1241.

[17] In *Harder v. State*, we also found that it was improper to revoke probation based upon proof of an act that is merely similar in nature to the violation charged in the written notice. 501 N.E.2d 1117, 1121 (Ind. Ct. App. 1986). In that case, the State alleged that Harder violated the terms of his probation by committing the offense of operating while intoxicated per se (.10% BAC). *Id*. However, the State only presented evidence that Harder was driving while impaired, and the trial court revoked Harder's probation based on Harder's impairment. *Id*. We reversed the revocation of probation, finding that the revocation could not rest on his commission of driving while impaired even though that offense was similar to the offense for which he was charged. *Id*. While *Harder* did not discuss whether the variance between the notice of violation and the basis of

revocation undermined Harder's ability to prepare his defense, the variance clearly hurt his ability to prepare a defense because the driving while impaired and operating while intoxicated per se relied on proof of different facts.

[18] After reviewing the facts alleged in the notice of probation violation and the facts established at the revocation hearing in the present case, we conclude that under these circumstances, battery and disorderly conduct were more than "similar" offenses; instead, the offenses are based on the exact same conduct, Lowder's fight with Allen. Therefore, unlike the defendants in *Long* and *Harder*, the variance between the offense named in the notice and the offense upon which Lowder's probation was revoked did not prejudice the preparation of Lowder's defense. Further, even if the notice had alleged that Lowder committed disorderly conduct instead of battery, Lowder's defense would have remained the same - self-defense. The evidence is undisputed that Lowder was involved in a fight with Allen; Lowder admits this. *Tr. Vol. II* at 25-27. Thus, Lowder's only viable defense, whether charged with battery or disorderly conduct, was self-defense. Therefore, the variance between the offense charged and the offense upon which the trial court revoked Lowder's probation did not undermine either Lowder's right to adequate notice or his ability to prepare a defense. Thus, the revocation of Lowder's probation did not violate his right to due process.

## III. Sanction

[19] Lowder argues that the trial court abused its discretion in ordering him to serve the remainder of his three-year sentence in the DOC. Lowder contends this

sanction is too harsh because Allen instigated the fight and because Lowder's actions were necessary to defend himself.

[20] We review sanctions imposed for a revocation of probation for an abuse of discretion. *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013). If the trial court finds that the person has violated a condition of probation, it may "[o]rder execution of all or part of the sentence that was suspended at the time of initial sentencing." Ind. Code § 35-38-2-3(h)(3).

[21] Here, the trial court did not abuse its discretion in ordering Lowder to serve the remainder of his three-year sentence in the DOC because, among other reasons, Lowder's criminal history, including multiple probation violations, shows that he cannot or will not take advantage of the opportunities afforded by probation. Lowder has had six convictions since 2014. *Appellant's Conf. App. Vol. II* at 62-65. In that same period, Lowder received seven notices of probation violations, and his probation was revoked three times. *Id*. at 63-65. In this case, the notice of violation was the second such notice filed against Lowder with this term of probation. *Tr. Vol. II* at 30. The earlier notice resulted in the trial court placing Lowder on "strict compliance." *Id*. Considering this criminal history, we agree with the State that Lowder's behavior indicates that he is not interested in reforming his behavior.

[22] We also reject Lowder's argument that his sanction is too harsh because his actions were necessary to defend himself. We acknowledge that Allen instigated the fight, but we earlier rejected Lowder's claim of self-defense and

with good reason. While our standard of review does not allow us to view the evidence as if we were the trier of fact, it is hard to conclude that any trier of fact would conclude that Lowder acted in self-defense, especially considering the evidence provided by the video recording of the fight. Thus, the trial court did not abuse its discretion in ordering Lowder to serve the remainder of his sentence in the DOC.

[23] Affirmed.

Bailey, J., and Mathias, J., concur.