## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 02 2020, 9:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas C. Allen
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Antoine L. Kelley Jr., *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff* | July 2, 2020 <br><br> Court of Appeals Case No. 19A-CR-2383 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable Frances C. Gull, Judge <br><br> Trial Court Cause No. 02D05-1904-MR-2 |

**May, Judge.**

[1] Antoine L. Kelley Jr. appeals his conviction of murder.[1] He raises two issues on appeal, which we revise and restate as: (1) whether the trial court abused its discretion when it refused to instruct the jury regarding the lesser-included offense of Level 5 felony reckless homicide,[2] and (2) whether the State presented sufficient evidence to support Kelley's murder conviction. We affirm.

## Facts and Procedural History

[2] In late March 2019, Christopher Ellis, Alfonso Rogers, Jacob Reed, and Darrius McMorris decided to travel from Chicago to Fort Wayne in order to visit Kelley and "to make some money[.]" (Tr. Vol. II at 158.) The five had grown up in the same neighborhood in Chicago and were childhood friends. On Sunday March 24, 2019, Kelley went to Chicago and drove the four others to Fort Wayne. Kelley was in the process of moving houses at the time, so his four friends helped him move on Wednesday and Thursday. Starting on Thursday, Ellis noticed "there was something wrong with [Kelley]." (*Id.* at 162.) Kelley acted "paranoid" and "nervous." (*Id.* at 189.) Kelley paced the floor, and he said people were out to get him and the police were watching him. However, he did not elaborate when his friends asked him why he was anxious.

---

[1] Ind. Code § 35-42-1-1.

[2] Ind. Code § 35-42-1-5.

[3]     On Sunday evening, March 31st, Kelley left his house to socialize with some of his friends from Fort Wayne, while his four friends from Chicago stayed at the house. They eventually fell asleep. Reed was the first of the four to wake on Monday, April 1, 2019. Reed was sitting in the kitchen when he noticed Kelley pacing back and forth. Ellis, Rogers, and McMorris were asleep in the nearby living room. Kelley stated that he needed McMorris to take him to the grocery store. Reed offered to take Kelley to the store, but Kelley insisted that McMorris take him. McMorris woke up and agreed to take Kelley to the store. McMorris said he first wanted to wash his face and brush his teeth. While McMorris was in the bathroom, Kelley walked to the bathroom door and fired multiple shots from a gun at McMorris. Kelley and McMorris did not say anything to each other before Kelley started shooting. One bullet struck McMorris in the back, and three other bullets hit him in the side. Ellis and Rogers watched as Kelley then backed out of the house with his handgun pointed at them and ran away. Reed left the house when Kelley began firing.

[4]     After Kelley left the house, Ellis, Rogers, and Reed rushed to a nearby gas station. They called the police, and they decided to leave Fort Wayne because they were worried Kelley might also harm them. The three took a Greyhound bus back to Chicago. Officers obtained a search warrant to search the house and found McMorris dead at the scene. Kelley left Fort Wayne after the shooting and drove to Tennessee where his girlfriend resided. He disposed of his gun somewhere along the highway.

[5]     On April 10, 2019, the State charged Kelley with murder.  The State also alleged that Kelley used a firearm in the commission of the offense, making him eligible for an additional penalty pursuant to Indiana Code section 35-50-2-11. Officers arrested Kelley in Tennessee and extradited him to Indiana.  The court held a jury trial from August 13 to August 15, 2019.  Kelley took the stand in his own defense at trial.  He testified there were two guns inside the house at the time, and McMorris reached into his sweatshirt for something that Kelley believed was the second gun before Kelley shot McMorris.  Kelley also testified that he had begun to suspect his friends were plotting to rob him because they would whisper amongst themselves and repeatedly asked him where he stored his money.  Kelley asked the trial court to instruct the jury on the lesser-included offense of reckless homicide.  However, the trial court refused the proposed instruction on the ground that a serious evidentiary dispute did not exist.  The jury returned a guilty verdict on the charge of murder and found beyond a reasonable doubt that Kelley used a firearm in the commission of the offense.  The trial court sentenced Kelley to a term of sixty years in the Indiana Department of Correction with ten years added to the sentence because of the firearm enhancement, for an aggregate term of seventy years.

## Discussion and Decision

### 1. Reckless Homicide Instruction

[6]     Kelley argues the trial court abused its discretion by not instructing the jury regarding the lesser-included offense of reckless homicide.  We review a trial

court's decision to give or deny a proposed jury instruction for an abuse of discretion. *Dixson v. State*, 22 N.E.3d 836, 839 (Ind. Ct. App. 2014), *trans. denied*. "A decision is an abuse of discretion when it is clearly against the logic and effect of the facts and circumstances." *Garner v. State*, 59 N.E.3d 355, 358 (Ind. Ct. App. 2016) (internal quotation marks omitted). When a party asks for the court to issue an instruction regarding a lesser included offense, the court evaluates the appropriateness of the instruction using a three-part test. *Watts v. State*, 885 N.E.2d 1228, 1231 (Ind. 2008). First,

> the court must compare the statute defining the crime charged
> and the statute defining the alleged lesser-included offense. If the
> alleged lesser-included offense may be established by proof of all
> of the same or proof of less than all of the same material elements
> to the crime, or if the only difference between the two statutes is
> that the alleged lesser-included offense requires proof of a lesser
> culpability, then the alleged lesser-included offense is inherently
> included in the crime charged.

*Id*. Second, if the court determines the proposed lesser-included offense is not inherently included in the charged crime, the court looks to the charging information to see if all the statutory elements of the proposed lesser-included offense are alleged in the charging information. *Id*. If either the first or second parts of the test are satisfied, then

> the trial court must examine the evidence presented by each party
> and determine whether there is a *serious evidentiary dispute* over
> the element or elements that distinguish the crime charged and
> the lesser-included offense. If it would be possible for a jury to
> find that the lesser, but not the greater, offense had been

committed, then the trial court must instruct the jury on both offenses.

*Id*. at 1232 (emphasis in original).

[7] Indiana Code section 35-42-1-1 defines murder as "knowingly or intentionally [killing] another human being[.]" Indiana Code section 35-42-1-5 provides, "A person who recklessly kills another human being commits reckless homicide, a Level 5 felony." The only difference between murder and reckless homicide is the level of culpability. Murder requires the perpetrator to act knowingly or intentionally, whereas reckless homicide requires only that the perpetrator act recklessly. Consequently, reckless homicide is an inherently lesser-included offense of murder. *McDowell v. State*, 102 N.E.3d 924, 931 (Ind. Ct. App. 2018), *trans. denied*.

[8] It is reversible error for a trial court to not give an instruction on an inherently lesser-included offense if there is a serious evidentiary dispute regarding the perpetrator's culpability. *Higgins v. State*, 783 N.E.2d 1180, 1187 (Ind. Ct. App. 2003), *trans. denied*. However, a trial court should not give such an instruction if there is no serious evidentiary dispute. *Id*. Kelley argues some evidence supported the theory that he acted recklessly rather than knowingly or intentionally because Kelley should have verified McMorris had a gun before Kelley shot McMorris. Kelley also contends McMorris' large physical size, combined with Kelley's fear that his friends were plotting to rob him, made him "suspicious and hypervigilant." (Appellant's Br. at 18.)

A defendant who fires a gun at another person at close range cannot do so without knowing his action is "highly probable to result in death." *Sanders v. State*, 704 N.E.2d 119, 122-23 (Ind. 1999). It is not disputed that Kelley shot McMorris four times, at close range, and in an enclosed space. The question presented to the jury was not whether Kelley intentionally fired his gun at McMorris, but whether Kelley did so in self-defense. Therefore, the trial court did not abuse its discretion in refusing Kelley's proposed jury instruction. *See Johnson v. State*, 986 N.E.2d 852, 856 (Ind. Ct. App. 2013) (holding trial court did not abuse discretion in refusing proposed jury instruction on a lesser included offense of reckless homicide because there was not a serious evidentiary dispute about *mens rea*).

## 2. Sufficiency of the Evidence

Kelley also asserts the State did not present sufficient evidence to rebut his self-defense claim. As our Indiana Supreme Court has explained:

> The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. We neither reweigh the evidence nor judge the credibility of witnesses. If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed.

*Wilson v. State*, 770 N.E.2d 799, 801 (Ind. 2002).

[11] A valid claim of self-defense is a legal justification for an otherwise criminal act. *Id*. at 800. Indiana Code section 35-41-3-2 (2013)[3] states that "a person: (1) is justified in using deadly force; and (2) does not have a duty to retreat; if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony." "To prevail on a claim of self-defense, the defendant must show that he: (1) was in a place where he had a right to be; (2) did not provoke, instigate, or participate willingly in the violence; and (3) had a reasonable fear of death or great bodily harm." *Quinn v. State*, 126 N.E.3d 924, 927 (Ind. Ct. App. 2019). If a defendant asserts a claim of self-defense, then the State bears the burden of negating at least one of the necessary elements. *Id*. The jury is tasked with deciding whether the State met its burden. *Id*.

[12] The State presented evidence that Kelley instigated the violence and did not reasonably fear for his life. Ellis, Rogers, and Reed testified that they did not observe any argument or altercation between Kelley and McMorris before Kelley started firing. Kelley fired his weapon multiple times and shot McMorris in the back. *See Hood v. State*, 877 N.E.2d 492, 497 (Ind. Ct. App. 2007) ("Firing multiple shots undercuts a claim of self-defense."), *trans. denied*.

[13] Further, it stands to reason that if Kelley truly believed his friends were trying to rob him, he would have reported the shooting to the police. However, he did

---

[3] This statute was amended effective April 26, 2019. However, the amended language is immaterial to the case at bar.

not do so. He left Indiana and disposed of his gun. *See Wilcoxson v. State*, 132 N.E.3d 27, 31 (Ind. Ct. App. 2019) (noting "an attempt to avoid arrest is evidence of a guilty conscience"), *trans. denied*. Therefore, the State presented sufficient evidence for a reasonable juror to conclude Kelley did not act in self-defense. *See Quinn*, 126 N.E.3d at 927 (holding State presented sufficient evidence to negate self-defense claim).

# Conclusion

[14] The trial court did not abuse its discretion in refusing to instruct the jury regarding the lesser included offense of reckless homicide because there was no serious evidentiary dispute regarding Kelley's level of culpability. Further, the State presented sufficient evidence to negate Kelley's self-defense claim. Therefore, we affirm Kelley's conviction of murder.

[15] Affirmed.

Robb, J., and Vaidik, J., concur.