# FOR PUBLICATION



**FILED**
Dec 17 2014, 7:32 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**JOEL M. SCHUMM**
Appellate Clinic
IU Robert H. McKinney School of Law

**JUSTIN M. WISER**
Certified Legal Intern
Appellate Clinic
IU Robert H. McKinney School of Law
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSEPH DIXSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1404-CR-184 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Rebekah Pierson-Treacy, Judge
The Honorable Shatrese M. Flowers, Commissioner
Cause No. 49F19-1311-CM-072873

**December 17, 2014**

**OPINION – FOR PUBLICATION**

**VAIDIK, Chief Judge**

## Case Summary

Joseph Dixson was convicted of Class A misdemeanor battery after a tussle with a security officer. Dixson now appeals, arguing that the trial court erred in instructing the jury on self-defense at his trial. Because this case does not involve deadly force, we conclude that the trial court erred in instructing the jury that, among other things, Dixson had to show that he had a reasonable fear of death or great bodily harm in order to prevail on his self-defense claim. We find the error to be harmless, however, and we therefore affirm.

## Facts and Procedural History

In November 2013 Dixson was an inmate at the Duvall Residential Center (Duvall), a work-release facility operated by Marion County Community Corrections. Faith Hoosier, a Duvall security guard, was monitoring the cafeteria one evening when Dixson entered.

Cafeteria rules require Duvall inmates to use a designated entrance door and show identification to receive a meal ticket. Tr. p. 51. When Dixson entered the cafeteria through the exit door, Hoosier approached him and told him that he needed to re-enter through the designated entrance door. *Id.* at 53-54. Dixson told Hoosier that he was ordering a "hot cart," which is different from the normal meal that most Duvall inmates receive. *Id.* at 54. An inmate ordering a hot cart must fill out a form at the serving line, pay for the meal in advance, and return to pick it up later in the evening. *Id.* Hoosier told Dixson that regardless of what meal he planned to eat, he needed to exit the cafeteria and re-enter through the designated entrance door. *Id.* at 55.

2

Dixson became "very confrontational, cursing, very rude, and insolent, and proceeded to go right past [Hoosier] . . . ." *Id.* Because Dixson did not comply with Hoosier's order, she repeated it, telling him "you cannot go through [the exit] door, you need to go out and around, follow this procedure that everyone else is following, then you can order your hot cart." *Id.* As a Duvall employee, Hoosier was permitted to use force "to respond to a resistant protective person" after a warning. *Id.* at 44. Because Dixson continued to disregard Hoosier's commands, she warned him that she would respond with force, saying, "I'm going to count to three [], and then I'm going to put my hands on you." *Id.* at 56. When Dixson still did not comply, Hoosier grabbed his forearm in an attempt to "physically remove him from the [cafeteria] . . . ." *Id.* at 58.

Dixson then "started to be combative" and began shoving Hoosier. *Id.* at 59. Hoosier fell to the ground. *Id.* at 60. The fall hurt Hoosier; she heard her ankle "snap" and "pop." *Id.* at 61. When she got back up, she was able to remove Dixson from the cafeteria without further incident. *Id.* Hoosier later felt "pretty intense" pain in her ankle. *Id.* Hoosier was later diagnosed with an ankle sprain that required physical therapy. *Id.* at 62.

The State charged Dixson with Class A misdemeanor battery. Dixson claimed self-defense at his jury trial. At the close of evidence, the State tendered four self-defense instructions. Defense counsel objected to one of those instructions, which read:

> STATE'S TENDERED FINAL JURY INSTRUCTION NO. 3
> When a defendant raises the claim of self-defense, he is required to show three facts:
>     (1) He was in a place where he had the right to be,
>     (2) He acted without fault, and
>     *(3) He had a reasonable fear of death or great bodily harm.*

3

Appellant's App. p. 77 (emphasis added). Defense counsel argued that the instruction improperly required a showing of great bodily harm and would mislead the jury. Tr. p. 135 ("It seems like it's stating that you can only claim self-defense if . . . you're facing great bodily harm, and that's not the case."). Defense counsel asked the court to use the pattern self-defense instruction instead. The trial court overruled the objection and gave the challenged instruction as Final Instruction 22. Appellant's App. p. 92. However, the court gave two additional self-defense instructions, including Final Instruction 23, which mirrored the Indiana Pattern Jury Instruction on self-defense. Thus, the jury received three final instructions on self-defense:

## FINAL INSTRUCTION NO. 21

Once a defendant claims self-defense, the State bears the burden of disproving at least one element of defense beyond a reasonable doubt for the defendant's claim to fail; the State may meet this burden by:
    (1) Rebutting the defense directly;
    (2) Affirmatively showing the defendant did not act in self-defense, or
    (3) Simply relying on the sufficiency of its evidence in chief.

## FINAL INSTRUCTION NO. 22

When a defendant raises the claim of self-defense, he is required to show three facts:
    (1) He was in a place where he had the right to be,
    (2) He acted without fault, and
    (3) He had a reasonable fear of death or great bodily harm.

## FINAL INSTRUCTION NO. 23

A person may use reasonable force against another person to protect [] himself . . . from what the Defendant reasonably believes to be the imminent use of unlawful force.

The State has the burden of proving beyond a reasonable doubt that the Defendant did not act in self-defense.

*Id.* at 91-93.

The jury found Dixson guilty of Class A misdemeanor battery, and the trial court imposed a time-served sentence. *Id.* at 16; Tr. p. 179. Dixson now appeals.

**Discussion and Decision**

Dixson argues that the trial court erred in instructing the jury on self-defense. We review the trial court's decision to give a jury instruction for an abuse of discretion. *Brooks v. State*, 895 N.E.2d 130, 132 (Ind. Ct. App. 2008) (citation omitted). To constitute an abuse of discretion, the instruction given must be erroneous, and the instructions viewed as a whole must misstate the law or otherwise mislead the jury. *Id.*

With respect to self-defense claims, Indiana law distinguishes force from deadly force, and provides in relevant part:

> A person is justified in using reasonable force against any other person to protect the person . . . from what the person reasonably believes to be the imminent use of unlawful force. However, a person:
>
> > (1) is justified in using deadly force; and
>
> > (2) does not have a duty to retreat;
>
> if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary.

Ind. Code § 35-41-3-2(c).

This Court has repeatedly stated that a defendant claiming self-defense must show three things: (1) he was in a place where he had a right to be; (2) he acted without fault; and (3) he had a reasonable fear of death or serious bodily harm. *See, e.g.*, *McCullough*

5

*v. State*, 985 N.E.2d 1135, 1138 (Ind. Ct. App. 2013) (citation omitted), *trans. denied*; *Hood v. State*, 877 N.E.2d 492, 497 (Ind. Ct. App. 2007) (citation omitted), *trans. denied*. A reasonable fear of death or serious bodily harm is undoubtedly required in a case involving deadly force. But when a case does not involve deadly force, a defendant claiming self-defense must only show that he was protecting himself from what he "reasonably believe[d] to be the imminent use of unlawful force." I.C. § 35-41-3-2(c). Because this case does not involve deadly force, the trial court should have instructed the jury that Dixson was required to show that he was protecting himself from what he reasonably believed to be the imminent use of unlawful force. Instead, Instruction 22 informed the jury that Dixson was required to show that he had a reasonable fear of death or great bodily harm. The trial court erred in giving Instruction 22.

After the court read Instruction 22, it gave a third instruction on self-defense, which provided:

> FINAL INSTRUCTION NO. 23
> A person may use reasonable force against another person to protect []
> himself . . . from what the Defendant reasonably believes to be the
> imminent use of unlawful force.
>
> The State has the burden of proving beyond a reasonable doubt that the
> Defendant did not act in self-defense.

Appellant's App. p. 93. Instruction 23 is a correct statement of the law as it applies to the facts of this case. But Instruction 22—which expressly stated what Dixson had to show to prevail on his self-defense claim—directly contradicted it. Thus, when taken as a whole, the instructions misled the jury with respect to Dixson's self-defense claim.

6

Although we conclude that the trial court erred in instructing the jury, reversal is not necessary. Any error in instructing the jury is subject to a harmless-error analysis. *Randolph v. State*, 802 N.E.2d 1008, 1011 (Ind. Ct. App. 2004), *trans. denied.* Errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the instruction would not likely have affected the jury's verdict. *Id.* at 1013. That is true here because the uncontradicted evidence shows that Dixson did not have a right to be in the Duvall cafeteria when the incident occurred: he disregarded the facility's protocols for entering the cafeteria and he disregarded Hoosier's commands to re-enter the cafeteria correctly. *See McCullough*, 985 N.E.2d at 1138 (a defendant claiming self-defense must show three things, including that he was in a place where he had a right to be and he acted without fault). The same evidence also shows that Dixson did not act without fault. Because the uncontradicted evidence negates Dixson's self-defense claim, we cannot conclude that the error in instructing the jury affected the jury's verdict.

Affirmed.

BAKER, J., and RILEY, J., concur.