

IN THE

# Court of Appeals of Indiana

Bruce Cutler,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Jan 28 2025, 9:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

January 28, 2025

Court of Appeals Case No.
24A-CR-1458

Appeal from the Marion Superior Court

The Honorable Peggy R. Hart, Magistrate

Trial Court Cause No.
49D36-2312-F6-34869

---

**Opinion by Judge Foley**
Judges Bailey and Bradford concur.

**Foley, Judge.**

[1] Following a bench trial, Bruce Cutler ("Cutler") was convicted of Level 6 felony battery resulting in moderate bodily injury[1] and his conviction was subsequently reduced to a Class A misdemeanor.[2] Cutler now appeals, presenting two issues for our review. We restate the appellate issues as:

    I.    Whether the trial court engaged in improper burden-shifting in rejecting Cutler's claim of self-defense; and

    II.    Whether the State presented sufficient evidence to negate Cutler's claim of self-defense.

[2] We affirm.

## Facts and Procedural History

[3] On December 14, 2023, the State charged Cutler with Level 6 felony battery resulting in moderate bodily injury. Cutler waived his right to a jury trial, and a bench trial was held on June 10, 2024. The trial testimony focused on a golf outing at Eagle Creek Golf Course on November 5, 2023, which involved a foursome of golfers: Cutler, Bradley Harper ("Harper"), Benjamin Austin ("Austin"), and Cory Getz ("Getz"). All members of the foursome testified.

---

[1] Ind. Code § 35-42-2-1(c)(1), (e)(1).

[2] I.C. § 35-50-2-7(d).

[4] The evidence indicated that, around the fourth hole, Cutler and Getz began arguing about glass panels Getz installed at Cutler's home two or three years earlier. One of the glass panels had spontaneously shattered, and the parties had previously disagreed about warranty coverage for the replacement. The argument escalated, with Getz calling Cutler a "piece of sh*t" during Cutler's golf swings. Tr. Vol. 2 pp. 62, 92–93. Harper was unsuccessful in attempts to defuse the situation. Around the sixth hole, Cutler left the group to play ahead.

[5] After completing their rounds of golf, the parties encountered one another in the parking lot. Getz testified that Cutler approached him at his truck and said his wife wanted an apology. Getz acknowledged that he swore at Cutler and told him to leave. Getz testified that he began changing his shoes, at which point Cutler "sucker punched" him—"punch[ing] [Getz] . . . in the face" without warning. *Id.* 36. Getz testified that Cutler's initial punch caused him to fall backward, hitting his truck before landing on the ground on his right elbow. Getz said that, while he was on the ground, Cutler pulled Getz's jacket over his head and "started punching [him] in the back of the head" as Getz "was screaming for help." *Id.* at 37. Eventually, Harper and Austin "pulled [Cutler] off[,]" and Getz went to the clubhouse and called the police. *Id.* at 38. Getz described "seeing stars" after the altercation. *Id.* Getz said his head hurt, his jaw was swollen, and he "could barely move [his] arm." *Id.* The next day, Getz went to the hospital and learned that he had fractured his right elbow.

[6] Harper and Austin testified about the altercation, but neither saw the details of how the physical fight began. As to Cutler, he testified that Getz removed his

glasses in a threatening manner as they discussed what was "literally a couple-hundred-dollar piece of glass." *Id.* at 95. Cutler testified that, having taken self-defense classes and wearing glasses himself, he regarded Getz's removal of his glasses as an indication that, for Getz, the disagreement was escalating and "not just verbal[.]" *Id.* Cutler testified about his ensuing attempt to salvage the friendship. According to Cutler, he suggested that they apologize, Getz then rebuffed the suggestion, and "[Cutler] said, well, it -- this is literally a couple-hundred-dollar piece of glass." *Id.* Cutler added: "I mean, I'm not bragging, but my home is a 1.7-million-dollar home. I'm not -- $200 isn't worth a -- a round of golf, as far as this, with all of our friends because we do hang out on different occasions." *Id.* Cutler testified that, at some point, Getz "came around [Getz's] truck," and then Cutler told Getz: "[M]y wife said we should apologize." *Id.* at 96. According to Cutler, Getz told him to "go f*ck" himself, adding: "[U]nless you're here to actually hit me, you better get the f*ck out of here." *Id.* Cutler testified that Getz "walked straight up to [him] around [the] truck" with clenched fists. *Id.* Cutler said that, while Getz was "within six inches of [Cutler's] face," Getz said: "[E]ither you're going to hit me or get the f*ck out of here." *Id.* Cutler testified that Getz moved in a threatening manner, explaining that Getz "threw his shoulder[.]" *Id.* At that point, Cutler—who was wearing glasses, "knew [Getz] was going to whack [him]," and was worried about "get[ting] hit with glasses"—decided to take "one swing with [his] right hand." *Id.* Cutler struck Getz. He described how Getz then "went backwards" and the two of them "scuffled" on the ground until the others intervened. *Id.*

In his closing argument, Cutler focused on his claim of self-defense. Cutler described the pertinent legal standard, which led to the following exchange:

> [Cutler:]          Once [Cutler] raises self-defense, the burden shifts back to [the State].
>
> [Trial court:]      Uh-huh. If you've proven it.
>
> [Cutler:]          Well, that's his testimony.
>
> [Trial court:]      Right.
>
> [Cutler:]          Right.
>
> [Trial court:]      Okay. State. Response?

*Id.* at 111. The State then referred to Getz's testimony, arguing that Cutler did not act in self-defense because he "was the aggressor" and "used unreasonable force." *Id.* The court gave Cutler the opportunity to respond, at which point Cutler focused on his version of the events as well as evidence that Getz "was causing trouble on the golf course" and "was . . . the instigator." *Id.* at 112.

After hearing the arguments, the trial court made the following remarks:

> I'm ready to rule. The [c]ourt ha[s] reviewed the evidence and has listened to argument. The [c]ourt does find [Cutler] . . . guilty of the crime of battery. [The] [c]ourt further finds the State has proven moderate bodily injury, which I do believe is legally defined as substantial pain, so I believe that also has been proven beyond a reasonable doubt.

*Id.* at 112. At that point, the trial court entered its judgment of conviction, and the parties sought to immediately proceed to sentencing without the preparation of a presentence investigation report. The trial court agreed to proceed to a sentencing hearing, with the court ultimately imposing a sentence of 360 days in jail with 358 days suspended to probation and a requirement that Cutler complete 100 hours of community service. Cutler initiated the instant appeal in June 2024. During the pendency of this appeal, Cutler successfully petitioned to have his Level 6 felony conviction reduced to a Class A misdemeanor.[3]

## Discussion and Decision

### I. Burden of Proof

Cutler claims that the trial court's remark during his closing argument—"Uh-huh. If you've proven it," Tr. Vol. 2 p. 111—demonstrates that the court improperly placed on Cutler the burden of proving that he acted in self-defense.

Indiana Code section 35-41-3-2 codifies the right to act in self-defense, declaring that "it is the policy of this state that people have a right to defend themselves and third parties from physical harm and crime." As to a claim of self-defense, "Indiana law distinguishes force from deadly force[.]" *Dixson v. State*, 22 N.E.3d 836, 839 (Ind. Ct. App. 2014), *trans. denied*. That is, "[a] person is justified in using reasonable force against any other person to protect [himself] .

---

[3] Cutler alerted us to the amended judgment of conviction by referring us to the Odyssey case management system, which reflects that the trial court amended the judgment to a Class A misdemeanor in August 2024.

. . from what [he] reasonably believes to be the imminent use of unlawful force." Ind. Code § 35-41-3-2(c). However, a person "is justified in using deadly force" and "does not have a duty to retreat" if he "reasonably believes that th[e] force is necessary to prevent serious bodily injury to [himself]." *Id.*

[11] As our Supreme Court explained in *Larkin v. State*, a defendant claiming self-defense must first satisfy a threshold evidentiary requirement to place self-defense at issue. 173 N.E.3d 662, 670 (Ind. 2021). In cases involving deadly force, this requires evidence that the defendant was in a place where he had a right to be, acted without fault, and had a reasonable fear of death or serious bodily harm. *Dixson*, 22 N.E.3d at 839. "But when a case does not involve deadly force, a defendant claiming self-defense must only show that he was protecting himself from what he 'reasonably believe[d] to be the imminent use of unlawful force.'" *Id.* (alteration in original) (quoting I.C. § 35-41-3-2(c)). Once the defendant has satisfied this initial requirement, the State then bears the burden of negating at least one of the elements beyond a reasonable doubt. *Larkin*, 173 N.E.3d at 670. The State may do so "by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief." *Id.*

[12] When a defendant claims the trial court misapplied this legal standard during a bench trial, it is generally "presumed that the trial court applied the correct burden of proof." *Moran v. State*, 622 N.E.2d 157, 159 (Ind. 1993). However, the defendant can overcome this presumption by showing that the "remarks of the judge . . . disclose use of an erroneous standard with clarity and certainty,"

*id.*, or that the record reflects an unjustifiable risk that the court did not follow the applicable law, *Justice v. State*, 237 N.E.3d 1154, 1159 (Ind. Ct. App. 2024).

[13] During his closing argument, Cutler referred to his initial burden of production, stating: "Once [Cutler] raises self-defense, the burden shifts back to [the State]." Tr. Vol. 2 p. 111. The trial court then remarked: "Uh-huh. If you've proven it." *Id.* Cutler then said: "Well, that's his testimony." *Id.* And the trial court acknowledged Cutler's point before turning to the State for rebuttal. *See id.* Cutler focuses on the trial court's use of the word "proven," arguing that the trial court's remark suggests that the court was requiring Cutler to satisfy the higher burden of "proof" rather than the threshold burden of "production."

[14] Although imprecise, the court's remark came during an exchange when defense counsel was articulating the legal standard, asserting that, "once he raises self-defense, the burden shifts back to [the State]." *Id.* The responsive remark appears to reference Cutler's initial burden of raising the defense before any burden shifts. Moreover, it appears that defense counsel understood what the trial court meant by the remark in that counsel responded by directing the court to Cutler's testimony describing the altercation. Cutler's testimony was evidence bearing on the initial burden of production, with Cutler asserting that Getz aggressively confronted him with clenched fists and "threw his shoulder," at which point Cutler punched Getz to avoid injury from "get[ting] hit with glasses[.]" *Id.* at 96. When the trial court made its remark, the court was not issuing its judgment. Rather, after the court's exchange with counsel, (1) the State argued that it negated Cutler's claim, (2) the court allowed a response

from the defense, and (3) the court issued its ruling, noting before doing so that it "ha[d] reviewed the evidence and . . . listened to argument." *Id.* at 112.

[15] This is distinguishable from *Justice*, where reversal was warranted when the trial court issued a ruling stating that "the State had met its burden of proof, and [the court] do[es] not find that the Defendant met the burden to -- for self-defense." 237 N.E.3d at 1159. Based on the problematic remarks in *Justice*, which were made in connection with the trial court's judgment, we concluded that "the trial court unequivocally placed on [the defendant] the burden of proving self-defense[.]" *Id.* In doing so, we noted that the trial court's "subsequent statements d[id] not suggest that the trial court's remark was simply a misstatement or that the trial court otherwise corrected the mistake." *Id.* Here, however, the record indicates that the trial court used imprecise terminology when essentially characterizing Cutler's initial burden of production as a burden of "proving" there was at least some evidence supporting each element of the defense. Unlike the scenario in *Justice*, here, the trial court's remark was made well ahead of its legal ruling, there were intervening arguments directed toward the application of the accurate legal standard, and nothing about the ruling suggested a misapprehension or misapplication of the law. Under the circumstances, we cannot say that the record is clear or certain enough to disclose an unjustifiable risk that the trial court did not follow the law. Thus, in this respect, Cutler has not identified a basis to disturb the judgment.

## II.   Sufficiency of the Evidence

[16]   Next, Cutler claims the State failed to present sufficient evidence to negate his claim of self-defense beyond a reasonable doubt.  When reviewing this type of claim, we "will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt." *Wilson v. State*, 770 N.E.2d 799, 801 (Ind. 2002).  In conducting our review, "[w]e neither reweigh the evidence nor judge the credibility of witnesses." *Id.*

[17]   As earlier noted, when a defendant claims self-defense involving the use of non-deadly force, the elements are that the defendant used reasonable force to protect himself from what he reasonably believed to be the imminent use of unlawful force.  I.C. § 35-41-3-2(c); *Dixson*, 22 N.E.3d at 839.

[18]   On appeal, Cutler invites us to focus on his version of the events.  But we are not at liberty to reweigh evidence.  At trial, Getz's testimony about the physical altercation contradicted Cutler's, with Getz testifying that, while he began to change his shoes, Cutler "sucker punched" him and continued to punch him while he was on the ground, delivering repeated blows to Getz's head.  Tr. Vol. 2 pp. 36–37.  Getz's testimony provided ample support for a fact-finder to conclude, beyond a reasonable doubt, that Cutler did not act in self-defense. Indeed, a reasonable fact-finder could determine that, as Getz changed his shoes, Cutler could not have reasonably believed that he was facing the imminent use of unlawful force.  We therefore conclude that the State presented sufficient evidence to disprove self-defense.

## Conclusion

[19] Cutler has not established a basis for reversing due to the trial court's remark during Cutler's closing argument, and the State presented sufficient evidence to negate Cutler's claim that he acted in self-defense.

[20] Affirmed.

Bailey, J. and Bradford, J., concur.

ATTORNEY FOR APPELLANT

Tyler D. Helmond
Voyles Vaiana Lukemeyer Baldwin & Webb
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney General
Brandon D. Smith
Deputy Attorney General
Indianapolis, Indiana